RAMIRO MORALES [Bar No.: 7101]
E-mail: rmorales@mfrlegal.com
MARC J. DEREWETZKY[Bar No.: 6619]
E-mail: mderewetzky@mfrleagl.com
MORALES, FIERRO & REEVES
600 South Tonopah Drive, Suite 300
Las Vegas, Nevada 89106
Telephone:     (702) 699-7822
Facsimile:     (702) 699-9455

Attorneys for Plaintiff ZURICH AMERICAN
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | CASE NO.: <br> DEPT.: |
| Plaintiff, | COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| ASPEN SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff ZURICH AMERICAN INSURANCE COMPANY ("Plaintiff" or "Zurich"), for its Complaint alleges as follows:  Zurich brings this Complaint for Breach of Contract, Breach of the Implied Covenant of Good Faith Fair Dealing, Equitable Contribution and Declaratory Judgment pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201, et seq., against Defendant ASPEN SPECIALTY INSURANCE COMPANY ("Aspen") and in support thereof states as follows:

## NATURE OF THE ACTION

1.     Zurich seeks damages for breach of an insurance contract, breach of the covenant of good faith and faith dealing implied into the insurance contract, and equitable contribution, and for a declaration of the rights, duties and obligations of the parties to the insurance contract.

2.     This is an action for money damages and for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties as more fully appears in this Complaint.

1    3.    Zurich also seeks further necessary or proper relief pursuant to 28 U.S.C § 2202.

2    **THE PARTIES**

3    4.    Zurich is a corporation engaged in the business of insurance, organized under the

4    laws of the State of New York, with its principal place of business in Illinois.

5    5.    Defendant Aspen is a corporation engaged in the business of insurance, organized

6    under the laws of the State of Texas with its principal place of business in Connecticut.

7    **JURISDICTION AND VENUE**

8    6.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

9    1332 (a), as diversity of citizenship exists between Zurich (a New York company with an Illinois

10   principal place of business), on one hand and Aspen (which is not incorporated nor has its

11   principal place of business in either New York or Connecticut), and the matter in controversy (*i.e.*,

12   the dollar amount of the allegedly insured damages) exceeds the sum or value of $75,000,

13   exclusive of interest and costs.

14   7.    This court has personal jurisdiction over Aspen based on the fact that Aspen is

15   conducting business in this District and that the obligations under the relevant Aspen insurance

16   contract are to be performed in this District.

17   8.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(a) (2) because

18   a substantial part of the events, acts or omissions giving rise to this dispute occurred in this

19   District, and because the obligations under the relevant insurance contracts were to be performed

20   in this District.

21   9.    An actual case or controversy exists between the parties, under Article III of the

22   United States Constitution and 28 U.S.C. § 2201, and Zurich's claim for declaratory relief is ripe

23   for review under 28 U.S.C. §§ 2201 and 2202, in that there is a substantial, actual, present

24   controversy among the parties to this action having adverse legal interests of sufficient immediacy

25   and reality to warrant the issuance of a declaratory judgment.

26   **GENERAL ALLEGATIONS**

27   10.    This dispute arises out of an underlying personal injury suit titled *Cochran v.*

28   *Nevada Property 1, LLC (d.b.a. "The Cosmopolitan of Las Vegas,") et al.*, District Court Clark

COMPLAINT                                                                    CASE NO.

County, Nevada, Case No. A-13-687601-C ("Underlying Action").  In the Underlying Action, plaintiffs Steven Cochran and Melissa Cochran ("Cochrans") generally alleged that on or about July 8, 2012, while attending a private Farmers Insurance event as patrons at the Marquee Nightclub located within The Cosmopolitan Hotel and Casino, the Cochrans were physically assaulted and violently and brutally attacked, without provocation, by Marquee employees resulting in personal injuries.

11.     The Cochrans filed their complaint in the Underlying Action on August 27, 2013 in the Eighth Judicial District Court in Las Vegas, Nevada.  A copy of the Cochrans' complaint is attached hereto as **Exhibit A**.

12.     In the complaint, the Cochrans asserted causes of action for: 1) Assault and Battery; 2) Negligence; 3) Intentional Infliction of Emotional Distress; 4) Defamation; 5) Loss of Consortium; and 6) False Imprisonment. The Cochrans sought general, special and punitive damages.

13.     In addition to Marquee, the Cochrans named Nevada Property 1, LLC, d/b/a The Cosmopolitan of Las Vegas ("Cosmopolitan") as a defendant.

14.     During the course of the Underlying Action, the Cochrans put forth evidence of how they were treated by Marquee security personnel, their resulting injuries and medical treatment.  The Cochrans' past and future medical bills were claimed to exceed $200,000.

15.     Marquee is a named insured to Aspen primary commercial general liability policy number CRA8XYD11, effective October 6, 2011, to October 6, 2012 ("Aspen Policy").

16.     The Aspen Policy includes limits of: $1,000,000 each occurrence; $1,000,000 personal and advertising injury for any one person or organization; and $2,000,000 general aggregate.

17.     Aspen's $1,000,000 each occurrence limit generally provides coverage for damages because of "bodily injury" caused by an "occurrence."

18.     Aspen's $1,000,000 personal and advertising injury coverage generally provides coverage for damages because of "personal and advertising injury," sustained by any one person or organization.

COMPLAINT                                                                                              CASE NO.

19.     Cosmopolitan is an insured to the Aspen Policy with respect to the Underlying Action.

20.     Cosmopolitan tendered the Underlying Action to Aspen for coverage under the Aspen Policy.

21.     Aspen acknowledged coverage for Cosmopolitan under the Aspen Policy, subject to a reservation of rights, but breached its legal and contractual obligations to Cosmopolitan, as well as its duty of good faith and fair dealing by offering to fund only 50 percent of an independent (i.e., not joint with Marquee) defense of Cosmopolitan in the Underlying Action.

22.     Aspen's reservation of rights letter to Cosmopolitan reserved the right to deny coverage for Cosmopolitan's alleged intentional, willful or malicious conduct, which reservation gave rise to Cosmopolitan's right to be defended by counsel of its own choosing.  However, Aspen never explained to Cosmopolitan the implications of its reservation of rights, nor did Aspen at any time relevant herein offer to pay for independent counsel for Cosmopolitan.

23.     Faced with the prospect of having to fund a portion of its own defense as a result of Aspen's wrongful and bad faith conduct, Cosmopolitan agreed to accept Aspen's offer to defend Cosmopolitan jointly with Marquee for the express purpose of saving money, despite the fact that indemnity provisions in the relevant contracts between Marquee and Cosmopolitan created a conflict of interest that should have disqualified one law firm from representing Marquee and Cosmopolitan jointly.

24.     During the course of the Underlying Action, Aspen took the position that its $2,000,000 aggregate limit of liability to pay for a settlement or judgment on behalf Cosmopolitan had been impaired such that the remaining limits of the Aspen policy were less than $975,000.

25.     Cosmopolitan is an insured to Zurich commercial general liability policy number PRA 9829242-01, effective November 1, 2011 to November 1, 2012 ("Zurich Policy"). The Zurich Policy contains a subrogation provision which transfers all of Cosmopolitan's rights of recovery against any other person or organization to Zurich for all or part of any payment made by Zurich under the Zurich Policy.

/ / /

COMPLAINT                                                                      CASE NO.

26.     Marquee is not an insured to the Zurich Policy and Zurich had and has no coverage obligations to Marquee in the Underlying Action.

27.     Throughout the Underlying Action, Aspen controlled the defense and all settlement negotiations on behalf of Marquee and Cosmopolitan.

28.     During the Underlying Action, Aspen was aware of facts, evidence and expert opinions supporting Cochrans' allegations that Marquee engaged in unreasonable and negligent conduct while mistreating the Cochrans; facts, evidence and expert opinions supporting Cochrans' claims that they sustained physical and emotional injuries as a result of the mistreatment; and facts, evidence and expert opinion supporting Steven Cochran's lost wage claim.

29.     As a matter of law, Cosmopolitan was only vicariously liable for the acts, errors, omissions and conduct of Marquee that caused the Cochrans' injuries and damages.

30.     During the course of the Underlying Action, the Cochrans' made offers to settle all claims against Marquee and Cosmopolitan within the remaining limits of the Aspen Policy, including a demand to settle in or around May 2017 for a total payment of $975,000.

31.     Zurich is informed and believes that, due to Aspen's wrongful conduct that resulted in Cosmopolitan accepting a defense through conflicted counsel, no offer was made at this time to settle the claims against Cosmopolitan alone for the amount demanded which was within the available limits of the Aspen policy, and instead Cosmopolitan remained a party to the Underlying Action and exposed to a judgment far in excess of the Aspen policy limits.

32.     On or about June 29, 2017, Aspen sent a letter to Marquee, with copies to Cosmopolitan and Zurich, in which it asserted that the remaining limits of the Aspen Policy were $958,500.  Zurich is informed and believes that this representation was either knowingly false or made without any reasonable basis for knowing whether or not it was true.

33.     Zurich is informed and believes and on that basis alleges that at the time the $975,000 settlement demand was open, the remaining limits of the Aspen Policy available to settle claims against its insureds, including Cosmopolitan, were in fact not less than $985,000.  Indeed, Aspen ultimately contributed $988,000 to the settlement of the Underlying Action, which Aspen then represented to be the remaining limits of the Aspen policy at the time of the settlement.

34.     In the face of the Cochran's $975,000 settlement demand, on June 16, 2017, Zurich sent a letter to Aspen demanding that Aspen fund the settlement in this amount, which was within the then available limits of the Aspen Policy.  Aspen, however, refused to settle the Underlying Action at that time when it had the opportunity to do so within its available limits, and the Cochrans' $975,000 settlement demand was either rejected or allowed to expire.

35.     Shortly after Zurich demanded that Aspen settle the Underlying Action within the Aspen policy limits, the Cochrans retained new counsel who withdrew the offer to settle for $975,000 and instead demanded in written offers of judgment $5,000,000 in settlement.

36.     Through further weeks and months of expensive litigation, a settlement was eventually reached by which the Cochrans accepted a total payment of $1,400,000, which was funded as follows:  Aspen - $988,000; Zurich – 323,187.66; and St. Paul (an excess insurer of Cosmopolitan) - $88,812.34.

37.     Given the facts known by Aspen, and the liability and damages assessments provided by the attorneys and/or consultants/experts Aspen hired to defend Cosmopolitan, Aspen's refusal to settle the Underlying Action for $975,000 when it had both the means and the opportunity to do so, was unreasonable and in bad faith, and exposes Aspen to a claim by Zurich, as Cosmopolitan's subrogee,  for the amount it was compelled to pay toward the settlement.

38.     Zurich's contribution to the settlement of the Underlying Action was made pursuant to a full and complete reservation of rights including, but not limited to, the right to seek reimbursement of the settlement payments made by Zurich.

<u>FIRST CAUSE OF ACTION</u>

Equitable Subrogation – Breach Of The Duty To Settle

39.     Zurich incorporates by reference all preceding paragraphs as though fully set forth herein.

40.     At all relevant times, Aspen had a duty to its insured Cosmopolitan to comply with the implied covenant of good faith and fair dealing, which is implied in all contracts, including insurance contracts.

/ / /

41.     Included in the implied covenant are duties imposed on Aspen with respect to settling or attempting to settle the Underlying Action on behalf of Cosmopolitan.  With respect to this duty to settle, Aspen was obligated to give the interests of Cosmopolitan at least as much consideration as it gave its own interests, and act as a prudent insurer in accepting offers to settle without considering policy limits.

42.     As part of its duty to settle, Aspen had a duty in the Underlying Action to accept a reasonable settlement demand within the available limits of its policy (at least the $988,000 it ultimately paid) so as not to expose Cosmopolitan to a judgment or settlement in excess of the available limit.  Breach of the duty to settle makes Aspen liable for all amounts paid by Zurich, as Cosmopolitan's subrogee, on behalf of Cosmopolitan, both within, and in excess of the Aspen policy limits.

43.     Aspen breached the duty to settle by refusing to settle the Underlying Action despite reasonable settlement demands by the Cochrans at or within the actual available Aspen policy limits.  Aspen further breached the duty to settle by failing to initiate and/or attempt settlement of the Underlying Action with the Cochrans for an amount at or within the available policy limits.

44.     Aspen's breach of the duty to settle is especially actionable considering, among other things: the extent of damages; the extent of Cosmopolitan's exposure; the probability of Cosmopolitan's liability; Aspen's lack of diligence in investigating the claims; the failure of Aspen to provide a conflict free defense; and the failure of Aspen to inform Cosmopolitan regarding, or offer to provide, independent counsel.

45.     As a direct result of Aspen's breach of the duty to settle, Cochran's reasonable settlement demand was withdrawn and replaced with offers of judgment totaling $5,000,000, and Zurich was ultimately compelled to contribute $323,187.66 to settle the claims against Cosmopolitan.

46.     Zurich, as Cosmopolitan's primary carrier, is subrogated by law, the Zurich policy and principles of equity to the rights of Cosmopolitan for claims against Aspen for breach of the duty to settle.

---

COMPLAINT                                                                                      CASE NO.

47.     As a result of Aspen's breach of the duty to settle, Zurich was forced to, and without acting as a volunteer, pay toward settlement of the Underlying Action.  Zurich, therefore, has been damaged in the liquidated sum of $323,187.66.

48.     Aspen is liable to Zurich in equitable subrogation for breach of the duty to settle, and justice requires that Aspen reimburse Zurich's damages in the amount of $323,187.66.

WHEREFORE, Zurich prays for judgment as hereinafter set forth.

<u>SECOND CAUSE OF ACTION</u>

Equitable Subrogation – Violations of NRS § 686A.310

49.     Zurich incorporates herein by reference all preceding paragraphs as though fully set forth.

50.     In addition to the duties imposed by law as alleged herein, Nevada Revised Statute ("NRS") § 686A.310 imposed certain duties and obligations on Aspen in the handling of the Underlying Action.

51.     Based on the conduct and actions alleged herein, Aspen violated multiple statutory prohibitions set forth under NRS § 686A.310 (1) including, but not necessarily limited to, the following:

- Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

- Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

52.     Per NRS § 686A.310 (2), Aspen is liable for all damages caused by the violations of NRS § 686.310 (1).

53.     Per NRS § 686A.270, Aspen's officers, directors, and/or department heads had knowledge of, and/or or permitted the acts committed by Aspen, as herein alleged.

54.     As a result of Aspen's violations of NRS § 686.310 (1), the Underlying Action headed to trial without settling, resulting much later in a $1,400,000 settlement, to which Zurich

COMPLAINT                                                                                                    CASE NO.

was compelled to contribute $323,187.66, whereas, had Aspen accepted the Cochran's reasonable settlement proposal of $975,000, Zurich would not have been required to contribute anything.

55.     Zurich is subrogated by law and principles of equity to the rights of Cosmopolitan for claims against Aspen for violations of NRS § 686A.310 (1).

56.     As a result of Aspen's violations of NRS § 686A.310 (1), Zurich was forced to pay, and without acting as a volunteer did pay, $323,187.66 to consummate the settlement of the Underlying Action to protect Cosmopolitan's interests, as well as its own interests.

57.     Aspen is liable to Zurich in equitable subrogation for violations of NRS § 686A.310 (1), and justice requires that Aspen reimburse Zurich's damages in the amount of $323,187.66.

WHEREFORE, Zurich prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION

Subrogation -- Breach of The Aspen Insurance Contract

58.     Zurich incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Cosmopolitan tendered the Underlying Action to Aspen for defense and indemnity under the Aspen Policy.  Aspen breached its obligations to Cosmopolitan under the Aspen Policy by, among other things, failing to provide a conflict-free defense, using economic coercion to compel Cosmopolitan to accept a joint, fatally conflicted defense, while at the same time failing to inform Cosmopolitan that, under Nevada law, Aspen's reservation of rights created a conflict between Aspen and Cosmopolitan entitling Cosmopolitan to independent defense counsel paid for by Aspen, favoring the interests of Marquee over Cosmopolitan's interests, and failing to pay an amount within its available limits to settle all claims against Cosmopolitan when it had opportunities to do so.

60.     Upon information and belief, Cosmopolitan performed all obligations owing under the Aspen Policy in connection with its tender of defense and indemnity, and Cosmopolitan satisfied all relevant conditions precedent in connection therewith.

/ / /

COMPLAINT                                                                                           CASE NO.

61.     As a direct and proximate result of Aspen's breach of its obligations under the Aspen Policy as alleged herein, the claims against Cosmopolitan did not settle within the available limits of the Aspen policy.  Rather, Zurich was compelled and required without acting as a volunteer to contribute $323,187.66 to a settlement of the claims against Cosmopolitan, reserving the right to pursue Aspen for that amount due to Aspen's breach of contract.  Zurich, therefore, has been damaged in the liquidated sum of $323,187.66.

62.     Unlike Aspen, Zurich did not breach its obligations to Cosmopolitan under the Zurich policy in connection with the Underlying Action, as Cosmopolitan's coverage under the Zurich policy did not apply until the Aspen policy exhausted.  As a result, Zurich, Cosmopolitan's primary carrier, sits in a position of superior equity to Aspen.

63.     Under the express terms of the Zurich policy and principles of subrogation, having made the settlement payment on behalf of Cosmopolitan, Zurich steps into Cosmopolitan's shoes, and succeeds to all of Cosmopolitan's rights of recovery against Aspen for breach of contract.

64.     It is just and fair to have Aspen reimburse Zurich for damages in the amount of $323,187.66, as it was Aspen's breach of its obligations under the Aspen policy, not that of Zurich, that resulted in the $1,400,000 settlement while the claims against Cosmopolitan could have settled within Aspen's available limits, and equity requires Aspen should therefore bear the burden of its improper conduct and reimburse St. Paul for its $323,187.66 contribution to the settlement.

WHEREFORE, Zurich prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Equitable Contribution

62.     Zurich incorporates by reference as though fully set forth herein the allegations in all of the preceding paragraphs.

63.     Aspen had and has an obligation to contribute its equitable share of its insured's liability toward the settlement of the Underlying Action.

64.     For the reasons discussed at greater length elsewhere in this Complaint, in contributing toward the settlement of the Underlying Action, Zurich made payments in excess of

COMPLAINT                                                                                          CASE NO.

1    its own equitable share and for which Aspen is obligated under principles of equity.

2        65.    Aspen has failed to contribute its fair and equitable share toward the settlement of

3    the Underlying Action.  The amount due from Aspen for its fair and equitable share of settlement

4    will be according to proof at trial.

5        66.    Aspen is obligated under principles of equity to reimburse Zurich for the sums it

6    has inequitably incurred in settling the Underlying Action.

7        Wherefore, Zurich prays for judgment against Aspen as hereinafter set forth.

8    FIFTH CAUSE OF ACTION

9    Equitable Indemnity

10       67.    Zurich incorporates by reference as though fully set forth herein the allegations in

11   all of the preceding paragraphs.

12       68.    Aspen has not paid its equitable share of the settlement of the Underlying Action.

13       69.    Zurich is entitled to reimbursement from Aspen of all sums Zurich has paid in

14   excess of its equitable share in connection with the settlement of the Underlying Action.

15       70.    Aspen is obligated under principles of equity to indemnify Zurich for the sums that

16   it has inequitably incurred in settling the Underlying Action.

17       Wherefore, Zurich prays for judgment against Aspen as hereinafter set forth.

18   PRAYER FOR RELIEF

19       1.    On the First Cause of Action, for damages against Aspen in the amount of

20   $323,187.66.

21       2.    On the Second Cause of Action, for damages against Aspen in the amount of

22   $323,187.66.

23       3.    On the Third Cause of Action, for damages against Aspen in the amount of the

24   $323,187.66.

25       4.    On the Fourth Cause of Action, for damages against Aspen in the amount of

26   Aspen's equitable share of the settlement of the underlying Action.

27       5.    On the Fifth Cause of Action, for damages against Aspen in the amount of the

28   $323,187.66.

COMPLAINT                                           CASE NO.

1      6.      For attorneys' fees.

2      7.      For costs of suit.

3      8.      For pre-judgment interest.

4      9.      For such other relief as this Court deems proper.

5                              <u>JURY TRIAL DEMANDED</u>

6          Zurich respectfully demands that the instant action be tried a jury.

7      Dated:  July 24, 2020                      MORALES FIERRO & REEVES

8

9                                       By:   <u>*/s/ Ramiro Morales*</u>
10                                            Ramiro Morales, [Bar No. 007101]
                                             Marc J. Derewetzky [Bar No. 6619]
11                                            600 So. Tonopah Dr., Suite 300
                                             Las Vegas, NV  89106
12
                                             Attorneys for Plaintiff
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT                                                            CASE NO.

EXHIBIT A

Electronically Filed
08/27/2013 03:55:11 PM

1 | **COMP**
Ruth L. Cohen, Esq. (NV Bar 1782)
2 | Email: rcohen@caplawyers.com
Paul S. Padda, Esq. (NV Bar 10417)
3 | Email: ppadda@caplawyers.com
COHEN & PADDA, LLP
4 | 4240 West Flamingo Road, Suite 220
Las Vegas, Nevada 89103
5 | Tele: (702) 366-1888
Fax: (702) 366-1940
6 | Web: caplawyers.com

**CLERK OF THE COURT**

7 | Attorneys for the Plaintiffs

8 | # DISTRICT COURT

9 | # CLARK COUNTY, NEVADA

10 | **STEVEN BRUCE COCHRAN and**
**MELISSA ANNE COCHRAN, individually,**
11 | **and as husband and wife,**

A-13-687601-C

12 | **Plaintiffs,**

Case No. _____

13 | **v.**

Dept. No. _____XIV_____

14 | **NEVADA PROPERTY 1, LLC**
**(d.b.a "The Cosmopolitan of Las Vegas");**
15 | **ROOF DECK ENTERTAINMENT, LLC**
**(d.b.a. "Marquee Nightclub");**
16 | **DOES 1 through 100; ROE ENTITIES**
**A through Z,**

*Demand For Jury Trial*

17 |
**Defendants.**
18 |

19 |
## COMPLAINT
20 |
This is a civil action seeking monetary damages. In support of this Complaint,
21 |
Plaintiffs hereby allege the following:
22 |
I.
23 |
### ARBITRATION EXEMPTION
24 |
1.      Nevada Revised Statute ("N.R.S.") 38.250 requires that "[a]ll civil actions
25 |
filed in district court for damages, if the cause of action arises in the State of Nevada
26 |

1   and the amount in issue does not exceed $50,000 per plaintiff, exclusive of attorney's

2   fees, interest and court costs, must be submitted to nonbinding arbitration . . .."

3      2.    This case is exempt from the arbitration program because "the amount in

4   issue" (i.e. damages) for each plaintiff significantly exceeds $50,000.00.

**II.**

**JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION**

7      3.    This civil action is brought by Plaintiffs pursuant to the statutory and

8   common law of the State of Nevada. Venue is appropriate in this Court because all

9   events giving rise to the present cause of action occurred in Clark County, Nevada.

10   The amount in controversy in this case is well in excess of $10,000.00.

**III.**

**THE PARTIES**

13      4.    Plaintiff, "Steven Bruce Cochran" or "Steve," is an adult individual that, for

14   all time periods relevant to this lawsuit, was a resident of Clark County, Nevada.

15      5.    Plaintiff, "Melissa Anne Cochran" or "Melissa," is an adult individual that,

16   for all time periods relevant to this lawsuit, was a resident of Clark County, Nevada.

17      6.    Steve and Melissa Cochran are husband and wife. During all time periods

18   relevant to this Complaint, they were a married couple. They have two children, each of

19   whom is a minor.

20      7.    Defendant, "Nevada Property 1, LLC" ("NP1"), is a corporation duly

21   registered to transact business in Nevada. NP1 owns and operates a hotel and casino

22   in Clark County, Nevada known as "The Cosmopolitan of Las Vegas" or

23   "Cosmopolitan." NP1 is being sued herein for monetary damages.

24      8.    Defendant, "Roof Deck Entertainment, LLC" ("Roof Deck"), is a

25   corporation duly registered to transact business in Nevada. Roof Deck owns and

2

1 operates a nightclub in Clark County, Nevada known as the "Marquee Nightclub" or

2 "Marquee." Roof Deck is being sued herein for monetary damages.

3      9.    Plaintiffs are informed and believe, and thereupon allege, that each of the

4 Defendants designated as Does 1 through 100, inclusive, is responsible in some

5 manner for the events and happenings herein referred to and negligently and/or

6 intentionally caused injuries and damages to Plaintiffs. Plaintiffs further allege that they

7 cannot currently ascertain the identity of each of the Doe Defendants and Plaintiffs will

8 therefore seek leave of Court to amend this Complaint to insert the true names and

9 capacities of Doe Defendants when they have been ascertained, together with

10 appropriate charging allegations and to join such Defendants in this action.

11     10.    Plaintiffs are informed and believe, and thereupon allege, that each of the

12 Defendants designated as Roe Entities A through Z, inclusive, is responsible in some

13 manner for the events and happenings herein referred to and negligently and/or

14 intentionally caused injuries and damages to Plaintiffs. Plaintiffs are informed and

15 believe that each of the Roe Entities is a corporation, related subsidiary, parent entity,

16 group, partnership, holding company, owner, predecessor entity, successor entity, joint

17 venture, related association or business entity, the true names of which are currently

18 unknown to Plaintiffs at this time. Plaintiffs further allege that they cannot currently

19 ascertain the identity of each of the Roe Defendants and Plaintiffs will therefore seek

20 leave of Court to amend this Complaint to insert the true names and capacities of Roe

21 Defendants when they have been ascertained, together with appropriate charging

22 allegations and to join such Defendants in this action.

23 . . .

24 . . .

25 . . .

26                                 3

**IV.**

**FACTUAL BACKGROUND**

11. On or about July 8, 2012, Steve and Melissa checked in as guests of the Cosmopolitan. They were there to attend a special Farmers Insurance ("Farmers") convention for top sales producers. Steve was a Farmers agent who had been invited by Farmers Insurance to attend the convention.

12. On July 10, 2012, Steve and Melissa attended a private Farmers event held at the Marquee Nightclub from between 6:30 p.m. until approximately 8 p.m. Following this event, Steve and Melissa accompanied other couples attending the same convention to the "STK Steakhouse" in the Cosmopolitan for dinner. They remained there until approximately midnight when they left and returned to the Marquee along with the other Farmers couples to continue the evenings festivities and to enjoy a musical act performing at Marquee.

13. While Steve and Melissa were at the Marquee listening to live music with the other Farmer's couples, a busboy passed the group and with his hand pushed a Farmers agent, Joseph Haas, very rudely with his hand. While pushing Mr. Haas in the shoulder area, the busboy's hand slipped and ended up making contact with his face. Additionally, the tray the busboy was carrying in his other hand ended up scratching Mrs. Haas' wife's face who was standing nearby her husband.

14. While the Haas' were understandably shaken up by the busboy's aggressive and unwarranted conduct, the busboy began flashing a flashlight to signal security to makes it way over. All of a sudden, six to ten security guards arrived at the spot where the group was standing. Two security guards approached Steve, who was standing in close proximity to Mr. Haas, and began acting in a very hostile and aggressive manner towards him either because they confused him for Mr. Haas or

4

1   simply because they desired to provoke a confrontation.  Despite Steve's attempts to
2   calm the situation, a guard slapped Steve knocking the glasses off of his face.  While
3   Steve bent down to retrieve his glasses, without which he could not see properly,
4   approximately three security guards jumped on his back and placed him in a choke
5   hold.  Digging their knees into Steve's back and shoulders, the guards placed handcuffs
6   on him.  Horrified at what was occurring and fearful for her husband's safety, Melissa
7   began to cry and scream her husband's name.  A security guard placed her in a
8   headlock and wrestled her to the ground.  Eventually, the guard released Melissa from
9   the headlock and she was helped up from the ground by another Farmer agent's wife.

10      15.    In the midst of the pandemonium, approximately five Marquee security
11   guards dragged Steve to a back room where they began forcefully slamming him into a
12   wall.  Later, they took him to a stairwell where they handcuffed him to a bench.  From
13   there, he was subsequently taken to what appeared to be a Cosmopolitan security
14   room where he was again handcuffed to a bench.  The handcuffs were administered so
15   tightly that they cut into Steve's skin causing him excruciating pain.  Despite his pleas to
16   be released, the guards refused to loosen the handcuffs or set him free.  Instead, he
17   was repeatedly told that if he wanted to be released: "just say you attacked us."  Steve
18   responded by stating that he did not attack anyone and informed the guards his father
19   was a police officer and that he would never attack anyone as he was not that type of
20   person.  During this interrogation and abuse by Marquee security, a Cosmopolitan
21   security guard stood idly by observing everything but offering no assistance to Steve.

22      16.    Eventually, a Cosmopolitan manager arrived on the scene.  Upon learning
23   that Steve was a guest of the hotel and was there for the Farmer's "Toppers Club"
24   convention, he directed the guards to release Steve.  The manager of Marquee, who
25   was present, told Steve that he would be released on the condition that he not "press

26                                      5

1  charges."

2      17.    The Cosmopolitan manager and members of security escorted Steve
3  through the hotel causing him extreme embarrassment as other guests gawked at him.
4  Reunited with Melissa at approximately 4:30 a.m. in the morning on July 11, 2012, the
5  couple were so distraught and emotionally upset they decided to immediately check out
6  of the hotel.  Prior to bringing Steve to Melissa, the Cosmopolitan manager apologized
7  to him.

8      18.    As a result of the vicious and unprovoked attack by Defendants' security
9  personnel, both Steve and Melissa have incurred significant physical, emotional and
10  financial injuries.

11      19.    By letters dated July 17, 2012, Defendants were formally notified of their
12  legal duty to preserve all video evidence relating to the events described in this
13  Complaint.

14                                   **V.**

15                    **PLAINTIFFS' FIRST CAUSE OF ACTION**
                              **(Assault and Battery)**
16                        **(Against All Defendants)**

17      20.    Plaintiffs, Steve and Melissa Cochran, reallege and incorporate by
18  reference the allegations set forth in paragraphs 1 through 19 above.

19      21.    The Plaintiffs lawfully and peacefully entered upon the property of the
20  Cosmopolitan and Marquee nightclub.  Plaintiffs were willfully, maliciously and without
21  just cause or provocation assaulted and battered by security guards/employees and/or
22  agents of the Marquee nightclub.  This conduct was ratified, encouraged and
23  countenanced by Cosmopolitan's employees/agents.  Specifically, Plaintiffs were
24  grabbed, hit, placed in choke holds, head locks and viciously beaten.

25      22.    As a direct and proximate cause of the assault and battery described

26                                     6

1    above, Plaintiffs have suffered physical, financial and emotional injuries, including pain

2    and suffering. Plaintiff have each had to incur medical treatment to address their

3    physical injuries. In addition to general (compensatory) and special damages, Plaintiffs

4    are entitled to recover punitive damages in an amount deemed appropriate to punish

5    Defendants for their malicious, wrongful and egregious conduct

6        23.    That as a direct and proximate result of the actions of Defendants, and

7    each of them, Plaintiffs have each been injured in an amount well in excess of

8    $10,000.00.

9                                          VI.

10                   **PLAINTIFFS' SECOND CAUSE OF ACTION**
                                **(Negligence)**
11                          **(Against All Defendants)**

12       24.    Plaintiffs, Steve and Melissa Cochran, reallege and incorporate by

13    reference the allegations set forth in paragraphs 1 through 19 above.

14       25.    Defendants at all times mentioned herein had a duty to maintain their

15    premises in a reasonably safe condition for the general public. Among those duties

16    included the duty to ensure that security personnel acted in a reasonable manner in the

17    performance of their duties and that security personnel received proper training in

18    carrying out those duties. Defendants breached their duty towards Plaintiffs.

19       26.    The attack suffered by Plaintiffs and the injuries resulting therefrom were

20    caused solely and proximately by the negligence of Defendants without any contributory

21    negligence on the part of Plaintiffs.

22       27.    The negligence of Defendants consisted in gross misconduct and/or

23    negligence by security personnel acting on behalf of Defendants resulting in significant

24    injuries to Plaintiffs. The gross misconduct and/or negligence of Defendants' security

25    personnel constituted a dangerous condition.

26                                          7

1          28.    Defendants had, or should have had, actual knowledge and notice of said
2   dangerous condition. That as a result of Defendants' negligence described in this
3   Complaint, Plaintiffs suffered injuries including, but not limited to neck pain, shoulder
4   pain, wrist pain, back pain, headaches and anxiety. Said injuries caused Plaintiffs to
5   suffer extreme physical pain and suffering and severe emotional distress resulting in
6   damages in excess of $10,000.00.

7          29.    As a result of their injuries, Plaintiffs have been required to engage the
8   services of physicians and medical treatment providers. Plaintiffs have incurred
9   damages in a sum currently unascertainable, but well in excess of $10,000.00, that will
10  continue to accrue as future medical treatments are necessary. As these sums
11  become ascertainable, Plaintiffs will seek leave of Court to declare them herein and
12  include them as part of their damages claim.

13         30.    As a proximate result of the negligence and carelessness of Defendants,
14  Plaintiffs have suffered extreme emotional distress, and severe physical pain and
15  suffering and will continue to experience these conditions in the future resulting in
16  damages well in excess of $10,000.00.

17         31.    As a further and proximate result of the negligence and carelessness of
18  Defendants, Plaintiffs have suffered lost wages/income and will continue to suffer lost
19  wages/income into the future in amounts exceeding $10,000.00 in damages.

20         32.    As a result of Defendants' negligence, Plaintiffs have been required to
21  obtain the services of an attorney to prosecute this action. Plaintiffs are entitled to an
22  award of attorney's fees and costs of suit incurred herein.

23         33.    The acts, conduct and behavior of Defendants, and each of them, were
24  performed knowingly and intentionally, oppressively and maliciously, by reason of which
25  each Plaintiff is entitled to punitive damages in a sum exceeding $10,000.00 from each

26                                              8

1  Defendant.

2

**VII.**

3

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Outrage – Intentional Infliction Of Emotional Distress)**
**(Against All Defendants)**

4

5

34.     Plaintiffs, Steve and Melissa Cochran, reallege and incorporate by

6

reference the allegations set forth in paragraphs 1 through 19 above.

7

35.     The acts, conduct and behavior of Defendants, and each of them, were

8

performed intentionally and recklessly, and actions taken by Defendants were extreme

9

and outrageous, causing Plaintiffs to suffer severe emotional distress by reason of

10

which Plaintiffs are entitled to punitive damages in a sum in excess of $10,000.00.

11

36.     As a result of the injuries described in this Complaint, Plaintiffs have been

12

required to engage the services of physicians and medical treatment providers and

13

other persons to care and treat them resulting in damages well in excess of $10,000.00.

14

These damages will continue to accrue as Plaintiffs require ongoing medical services.

15

37.     As a further and proximate result of the conduct and behavior of

16

Defendants, the Plaintiffs have suffered lost wages/income and will continue to suffer

17

lost wages/income into the future, all to their detriment in an amount in excess of

18

$10,000.00.

19

**VIII.**

20

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Defamation)**
**(Against All Defendants)**

21

22

38.     Plaintiffs, Steve and Melissa Cochran, reallege and incorporate by

23

reference the allegations set forth in paragraphs 1 through 19 above.

24

39.     Plaintiffs were viciously "attacked" in the presence of other patrons,

25

26

9

1  including Farmers business associates, against their will and were falsely, publicly and
2  maliciously accused of having engaged in inappropriate conduct.

3      40.    Plaintiffs were further subjected to derogatory and demeaning comments
4  and innuendos by employees of Cosmopolitan and Marquee in the presence of third-
5  parties. Such comments were false, baseless and defamatory.

6      41.    That as a direct and proximate result of the actions of Defendants, and
7  each of them, Plaintiffs have been injured in an amount in excess of $10,000.00.

8      42.    That the acts of Defendants, and each of them, were done willfully, with
9  malice and oppression and with a conscience disregard for Plaintiffs' rights and
10  therefore, Plaintiffs are entitled to recover punitive damages in an amount deemed
11  appropriate to punish the Defendants for their wrongful and egregious conduct.

12                                        IX.

13                        **PLAINTIFFS' FIFTH CAUSE OF ACTION**
                                 **(Loss Of Consortium)**
14                              **(Against All Defendants)**

15      43.    Plaintiffs, Steve and Melissa Cochran, reallege and incorporate by
16  reference the allegations set forth in paragraphs 1 through 19 above.

17      44.    Plaintiffs, during all time periods relevant to this Complaint, were lawfully
18  married to one another as husband and wife.

19      45.    As a direct and proximate result of Defendants' wrongdoing and/or
20  negligence, and the resulting injuries sustained by each Plaintiff, each Plaintiff was
21  deprived, and continues to be deprived, of the spousal society, services and consortium
22  of the other.

23      46.    As a result of being deprived of spousal society, services and consortium,
24  each Plaintiff has been damaged in an amount in excess of $10,000.00.

25  . . .

26                                         10

X.

## STEVE COCHRAN'S SIXTH CAUSE OF ACTION
### (False Imprisonment)
### (Against All Defendants)

47.     Plaintiff, Steve Cochran, realleges and incorporates by reference the allegations set forth in paragraphs 1 through 19 above.

48.     Plaintiff lawfully and peacefully entered upon the property owned by Defendants.

49.     That during his time on the property, Plaintiff was physically abused by Marquee security and/or employees of Cosmopolitan who refused to allow Plaintiff to leave but, on the contrary, then and there, without any probable or reasonable cause therefore, unlawfully detained Plaintiff by chaining/handcuffing him to a bench refusing to let him go out of fear that he might "press charges" against them.

50.     Plaintiff was subjected to great indignities, humiliation and disgrace in being assaulted, imprisoned, restrained against his will, battered, detained and forced to witness his wife being placed in a head lock by a large, male security guard. As a result of said conduct, third parties were thereby made aware that Plaintiff was being intentionally restrained.

51.     That as direct and proximate result of the actions of Defendants, and each of them, Plaintiff has been injured in an amount in excess of $10,000.00.

52.     That the acts of Defendants, and each of them, were done willfully, with malice and oppression and with conscious disregard for Plaintiff's rights and therefore, Plaintiff is entitled to recover punitive damages in an amount deemed appropriate to punish the Defendants for their wrongful and egregious conduct.

.   .   .

.   .   .

11

1                                                **XI.**

2                                    **RELIEF REQUESTED**

3       53.      Wherefore, in light of the foregoing, Plaintiffs, Steve and Melissa Cochran,

4    request that the Court enter the following relief in this matter:

5                i.      Set this matter for trial by jury on a date certain;

6                ii.     Enter declaratory judgment in favor of Plaintiffs on the basis that

7                        Defendants' conduct violated common law rights;

8                iii.    Award Plaintiffs, each of them, compensatory, hedonic and special

9                        damages in amounts exceeding $10,000.00;

10               iv.     Award Plaintiffs, each of them, punitive damages in amounts

11                       exceeding $10,000.00;

12               v.      Award Plaintiffs, each of them, interest on all sums according to

13                       law;

14               vi.     Award Plaintiffs their costs and reasonable attorneys fee;

15               vii.    Award all other just and proper relief.

16                                                      Respectfully submitted,

17                                                      /s/ Paul S. Padda

18                                                      Ruth L. Cohen, Esq.
                                                        Paul S. Padda, Esq.
19                                                      COHEN & PADDA, LLP
                                                        4240 West Flamingo Road, Suite 220
20                                                      Las Vegas, Nevada 89103
                                                        Tele: (702) 366-1888
21                                                      Fax: (702) 366-1940
                                                        Web: caplawyers.com
22
                                                        Attorneys for the Plaintiffs
23
                                                        Dated: August 27, 2013
24

25

26                                                 12