UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Plaintiff<br><br>v.<br><br>ASPEN SPECIALTY INSURANCE COMPANY,<br><br>    Defendant | Case No.: 2:20-cv-01374-APG-DJA<br><br>**Order Granting in Part Motion to Dismiss**<br><br>[ECF No. 7] |

    Both Zurich American Insurance Company and Aspen Specialty Insurance Company issued insurance policies that covered The Cosmopolitan Hotel and Casino for an incident that occurred in the hotel's Marquee nightclub. Zurich alleges that Aspen breached its insurance contract because it failed to provide The Cosmopolitan with a conflict-free defense and then failed to accept a settlement offer that fell within Aspen's policy limits. The underlying litigation ultimately settled for several hundred thousand dollars more than the rejected settlement offer, and Zurich contributed over $300,000 to the settlement. Zurich sues Aspen for equitable subrogation based on Aspen's alleged breach of the insurance contract and for violations of Nevada's unfair claims practices act. Zurich also asserts claims for contractual subrogation, equitable contribution, and equitable indemnity based on the same facts.

    Aspen moves to dismiss, contending that Zurich's claims fail as a matter of law because Nevada does not recognize these claims in the context of a dispute between two primary insurers. Aspen also contends that even if such claims exist in this context, Zurich has not plausibly

alleged facts to support each element of those claims. I grant Aspen's motion as to Zurich's equitable contribution claim, with leave to amend. I deny the remainder of Aspen's motion.

## I. BACKGROUND

In July 2012, the Steven and Melissa Cochran were guests at The Cosmopolitan, and during their stay they went to the Marquee nightclub located there. ECF No. 1 at 17. They claim they were attacked by Marquee employees. *Id.* at 17-19. They sued the owners of The Cosmopolitan and the owners of the Marquee nightclub. *Id.* at 3, 15-16.

Marquee is a named insured in an Aspen primary commercial general liability policy with limits of $1 million per occurrence and $2 million general aggregate. *Id.* at 3. The Cosmopolitan is an additional insured under the Aspen policy with respect to the Cochran's lawsuit. *Id.* at 4. The Cosmopolitan tendered the lawsuit to Aspen, and Aspen acknowledged coverage subject to a reservation of rights. *Id.* Aspen offered to either fully fund a joint defense with Marquee or to fund only 50 percent of an independent defense of The Cosmopolitan.[1] *Id.* The Cosmopolitan agreed to the joint defense to save money, "despite the fact that indemnity provisions in the relevant contracts between Marquee and Cosmopolitan created a conflict of interest that should have disqualified one law firm from representing" the two jointly. *Id.*

The Cosmopolitan is also insured by Zurich under a commercial general liability policy. *Id.* Zurich's policy contains a subrogation clause "which transfers all of Cosmopolitan's rights of recovery against any other person or organization to Zurich for all or part of any payment made by Zurich under the Zurich policy."[2] *Id.* Marquee is not an insured under the Zurich policy. *Id.* at 5.

---

[1] Zurich alleges Aspen breached its obligation to The Cosmopolitan with this offer.

[2] The Zurich policy is not provided. The quoted language is Zurich's allegation in the complaint.

2

Aspen controlled the defense in the Cochran lawsuit, including settlement negotiations on behalf of both Marquee and The Cosmopolitan. *Id.* Zurich alleges that Aspen was presented with evidence and expert opinions supporting the Cochrans' claims. *Id.* In May 2017, the Cochrans offered to settle the case against Marquee and The Cosmopolitan for $975,000. *Id.* at 5. Zurich demanded Aspen settle within the available limits of Aspen's policy, but Aspen refused. *Id.* at 6. Zurich contends this refusal was unreasonable and in bad faith. *Id.*

The lawsuit later settled for $1.4 million, with Aspen contributing $988,000, Zurich contributing $323,187.66, and The Cosmopolitan's excess insurer contributing $88,812.34. *Id.* Zurich alleges that its contribution to the settlement was made under a reservation of rights. *Id.*

Based on these allegations, Zurich asserts five claims against Aspen: (1) equitable subrogation – breach of the duty to settle; (2) equitable subrogation – violations of Nevada Revised Statutes (NRS) § 686A.310; (3) subrogation – breach of the Aspen insurance contract; (4) equitable contribution; and (5) equitable indemnity. Aspen moves to dismiss all claims.

## II. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica, Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

/ / / /

### A. Equitable Subrogation

Aspen argues that Zurich's equitable subrogation claims fail because the Supreme Court of Nevada has not recognized a claim for equitable subrogation amongst insurers and this court should not do so. Aspen contends that even if the claim exists, Zurich has not plausibly alleged the elements of a claim as established in jurisdictions that recognize it. Aspen contends that for subrogation, Zurich would step into its insured's shoes, and The Cosmopolitan suffered no damages because it did not pay anything toward the settlement. Aspen also contends that Zurich was The Cosmopolitan's primary insurer and the facts do not put Zurich in a more equitable position than Aspen, so equitable subrogation would not apply.

Zurich responds that the Supreme Court of Nevada has recognized subrogation as a general equitable doctrine and would apply it in any circumstance where it was appropriate, including between insurers. Zurich also contends it has adequately alleged the circumstances that would support equitable subrogation. Zurich contends the question is whether the insured would have had to make up the difference in the settlement if it had not been insured, so the fact that The Cosmopolitan suffered no loss because Zurich paid it instead does not defeat a subrogation claim.

The Supreme Court of Nevada has "recognized the doctrine of equitable subrogation in a variety of situations." *In re Fontainebleau Las Vegas Holdings*, 289 P.3d 1199, 1209 n.8 (Nev. 2012) (en banc). But it has not addressed whether it would recognize equitable subrogation in the context of two insurance companies and, if so, what an insurer claiming subrogation would have to prove. I therefore must predict how that court would rule if the issue were presented to it. *See Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other

jurisdictions, statutes, treaties, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted).

Subrogation "is an equitable doctrine created to accomplish what is just and fair as between the parties." *AT & T Techs., Inc. v. Reid*, 855 P.2d 533, 535 (Nev. 1993) (quotation omitted). "It arises when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another." *Id.* There need not be a contractual relationship between the parties for equitable subrogation to arise. *Id.* Rather, it is an "equitable remedy that requires the court to balance the equities based on the facts and circumstances of each particular case." *Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 245 P.3d 535, 538 (Nev. 2010) (en banc). Under Nevada law, courts "have full discretion to fashion and grant equitable remedies." *Id.* Consequently, I predict the Supreme Court of Nevada would allow equitable subrogation between insurance companies when appropriate. *See Colony Ins. Co. v. Colorado Cas. Ins. Co.*, No. 2:12-cv-01727-RFB-NJK, 2016 WL 3360943, at *4 (D. Nev. June 9, 2016) (concluding the Supreme Court of Nevada would allow for equitable subrogation in the context of an excess insurance carrier against a primary insurance carrier).

The question then is what factors the Supreme Court of Nevada would say courts should consider when determining whether equitable subrogation between insurers is appropriate. I look to California law for guidance because the Supreme Court of Nevada often does that when deciding an issue of first impression. *See Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004) ("Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." (quotation omitted)).

The parties agree that under California law, the elements of equitable subrogation are:

(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is

5

> legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was not primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (Cal. Ct. App. 1998) (emphasis omitted); ECF Nos. 7 at 10; 11 at 21-22 (both citing to *Fireman's Fund*).

### 1.  Insured suffered a loss for which the defendant is liable.

Zurich has plausibly alleged that The Cosmopolitan suffered a loss for which Aspen is liable.  Zurich alleges that Aspen breached its duty to accept the Cochrans' reasonable settlement demand, thereby causing a later settlement that exceeded Aspen's policy limit by over $300,000, for which The Cosmopolitan would have been liable if it did not have other insurance.  The fact that The Cosmopolitan did not actually have to pay out of pocket does not mean it suffered no loss in the context of equitable subrogation. *See Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 515 (9th Cir. 1984) (rejecting the argument that the insured suffered no damages where the excess insurer paid because "equitable subrogation permits the excess insurer to assume the position of the insured as if he lacked excess coverage").  Such a rule would be internally inconsistent because the test requires that the insured have "an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer." *Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1292. The test thus assumes the insurer has paid for the insured's loss.

2. Claimed loss is one for which the insurer is not primarily liable.

Aspen contends that because Zurich is a primary insurer, it is "primarily liable" for The Cosmopolitan's loss, so it cannot assert equitable subrogation. Zurich responds that the claimed loss is one for which Zurich was not primarily liable because (1) Zurich's policy responds after Aspen's and (2) Aspen's bad faith conduct caused the increased settlement amount.

Zurich's complaint does not plausibly allege that its policy was in excess of, or responds after, Aspen's policy. Rather, by Zurich's alleged facts, both Zurich and Aspen were primary insurers for The Cosmopolitan under their respective policies. *See* ECF No. 1 at 3-4.

But that does not necessarily mean that the Supreme Court of Nevada would adopt Aspen's argument that "primarily liable" in California's equitable subrogation test refers to an insurer who has primary coverage. The court might conclude that "primarily liable" refers to the party primarily responsible for causing the loss. That would be consistent with equitable subrogation's aim to "place the burden of a loss on the party ultimately liable or responsible for it." *Fireman's Fund Ins. Co.*, 65 Ca. App. 4th at 1296. If this element applies in Nevada, and if that is its proper meaning, then Zurich has plausibly alleged that Aspen is the party ultimately responsible for increasing the overall settlement amount through its bad faith conduct.[3] Absent some indication that Nevada would preclude equitable subrogation in these circumstances, I decline to dismiss on this basis. *See McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir.

---

[3] Zurich has asserted alternative remedies of equitable subrogation and equitable contribution. Under California law, equitable contribution typically does not consider fault or bad faith between the insurers. *See Fireman's Fund Ins. Co.*, 65 Cal. App. 4th at 1296. Instead, it requires insurers who have insured the same risk to share pro rata in the defense and indemnity of their mutual insured. *Id.* at 1293. If Nevada would follow that rule for equitable contribution, then precluding a primary insurer from resorting to equitable subrogation where another primary insurer increases the cost for all primary insurers of the same risk through bad faith conduct would leave the nonbreaching insurer without a remedy. That does not seem fair or equitable.

7

2004) (suggesting that courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." (quotation omitted)).

### 3.  Zurich compensated the cosmopolitan for the loss and did not volunteer.

Zurich has plausibly alleged that it compensated The Cosmopolitan for the loss for which Aspen is primarily liable because it contributed $323,187.66 to the settlement after Aspen allegedly rejected a lower, reasonable settlement demand.  Zurich also alleges that it made the payment to protect its own interest and not as a volunteer because the loss was potentially covered by Zurich's policy.

### 4.  Insured has an assignable cause of action against defendant.

Zurich has plausibly alleged that The Cosmopolitan has existing, assignable claims against Aspen that The Cosmopolitan could have asserted on its own benefit had it not been compensated for its loss by Zurich.  Zurich has plausibly alleged that Aspen acted in bad faith when it refused to accept the Cochrans' lower settlement demand despite having evidence of both liability and damages. *See Tweet v. Webster*, 610 F. Supp. 104, 105-06 (D. Nev. 1985) ("Under Nevada law, an insurer is liable to its insured for any bad faith refusal to settle."); *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (en banc) (stating that bad faith means "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy" (quotation omitted)).  Aspen contends The Cosmopolitan has no assignable breach of contract claim because it paid nothing toward the settlement, so it suffered no damages from Aspen's alleged breach.  But as discussed above, Zurich has plausibly alleged that The

Cosmopolitan would have had to fund the additional settlement amount if it were not insured by Zurich.

Zurich also has plausibly alleged The Cosmopolitan has an assignable claim under the Nevada unfair claims practices act. Zurich alleges Aspen violated NRS § 686A.310 by failing to effectuate an equitable settlement of the claim, misrepresenting the amount of available policy limits at one point, and failing to provide conflict-free counsel. Aspen contends that Zurich is not a party to the insurance contract between Aspen and The Cosmopolitan, and third parties cannot sue insurers under the act. But Zurich is not suing Aspen as a third party. Rather, under subrogation, Zurich steps into The Cosmopolitan's shoes. *See Westport Ins. Corp. v. Cal. Cas. Mgmt. Co.*, 916 F.3d 769, 781 (9th Cir. 2019) ("Equitable subrogation puts the insurer in the position of the insured to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." (quotation omitted)); *Troost v. Est. of DeBoer*, 155 Cal. App. 3d 289, 295 (Ct. App. 1984) ("It is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not discharged the liability or paid the loss." (quotation omitted)). Finally, Aspen again argues that The Cosmopolitan suffered no damages from any alleged unfair practice; but as discussed above, the fact that Zurich paid the loss gives rise to subrogation, rather than negating it.

### 5. Insurer suffered damages caused by defendant's act.

Zurich has plausibly alleged it suffered damages due to Aspen's bad faith refusal to settle for a lower amount. Zurich contends it had to contribute over $300,000 to settle the Cochrans' claim due to Aspen's bad faith refusal to accept the lower settlement amount.

/ / / /

### 6. Justice requires the loss be entirely shifted from insurer to defendant.

Zurich has plausibly alleged that justice requires its $323,187.66 loss be shifted to Aspen. It claims that but for Aspen's bad faith conduct, Zurich would not have had to pay that amount to settle the Cochran lawsuit. Facts about Zurich's acts or omissions may tip the balance of the equities later in the litigation. For example, it appears from the complaint that Zurich did not contribute to The Cosmopolitan's defense or settlement as a fellow primary insurer. But weighing the equities is not suitable for resolution at this stage where all the relevant facts and circumstances have not been put forth. Additionally, whether Aspen may have counterclaims or offsets for contribution or subrogation is not before me on this motion to dismiss.

### 7. Damages are a liquidated sum.

Finally, Zurich has plausibly alleged its damages are liquidated: $323,187.66.

### 8. Summary.

In sum, Zurich has plausibly alleged a claim for equitable subrogation. The facts may later demonstrate that either subrogation is not warranted or, if it is, that Aspen is entitled to offsets for equitable contribution or subrogation in the other direction. But accepting the allegations as true as I must at this stage, I deny Aspen's motion to dismiss the equitable subrogation claims.

**B. Contractual Subrogation**

Aspen argues that Nevada courts have expressly rejected contractual subrogation in the insurance context as a matter of public policy. Zurich responds that Nevada will enforce contractual subrogation clauses in the insurance context unless they involve an insurer attempting to subrogate its insured's medical payments damages because personal injury claims are not assignable and because there is a risk that the insured will not be made whole while the

insurer receives a windfall. Zurich argues that is not relevant here because this does not involve medical payments to The Cosmopolitan and The Cosmopolitan has been made whole by the insurers funding the entire settlement.

In *Maxwell v. Allstate Insurance Companies*, the Supreme Court of Nevada held that a subrogation provision in an insurance contract was void as against public policy. 728 P.2d 812, 815 (Nev. 1986). The court concluded that "it violates public policy to allow an insurer to collect a premium for certain coverage and then allow the insurer to subrogate its interest and deny the insured his benefits" because that "deprives the insured of the coverage for which he had paid and results in a windfall recovery for the insurer." *Id*. The court was particularly concerned with ensuring the injured person is made whole before the insurer attempts to assert subrogation rights. *Id*. The Supreme Court of Nevada later held that "where an insured receives a full and total recovery, *Maxwell* and its public policy concerns are inapplicable." *Canfora v. Coast Hotels & Casinos, Inc.*, 121 P.3d 599, 604 (Nev. 2005) (quotation omitted).

Here, Zurich plausibly alleges it had a subrogation provision in its insurance contract with The Cosmopolitan. It also alleges that The Cosmopolitan has been made whole because the settlement was entirely funded by the insurance companies. Thus, contractual subrogation is not barred as a matter of Nevada public policy. To the extent the Supreme Court of Nevada would follow California courts in concluding that in the insurance context, a contractual subrogation provision provides no greater rights or remedies than would be available under equitable subrogation,[4] Zurich has plausibly alleged equitable subrogation. I therefore deny Aspen's motion to dismiss this claim.

---

[4] *See AMCO Ins. Co. v. All Sols. Ins. Agency, LLC*, 244 Cal. App. 4th 883, 900-01 (Cal. Ct. App. 2016); *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1106 (Cal.

### C. Equitable Contribution

Aspen contends Nevada would not recognize a claim for equitable contribution where it is an equitable subrogation claim in disguise. Aspen contends that contribution does not apply because Aspen funded The Cosmopolitan's defense and the lion's share of the settlement. Aspen asserts that by Zurich's own allegations, it does not seek to apportion liability between it and Aspen but instead seeks to shift the entirety of the defense and settlement to Aspen even though they are both primary insurers of The Cosmopolitan. Zurich responds that Nevada would follow California and allow for equitable contribution claims. It also contends that it has plausibly alleged that it was inequitable for it to pay because Aspen acted in bad faith, resulting in Zurich having to contribute to the settlement.

"[W]hen two insurers provide coverage to the same insured for the same risk," one insurer may sue the other for equitable contribution. *Travelers Prop. Cas. Co. of Am. v. Amica Mut. Ins. Co.*, No. 2:15-cv-01420-APG-CWH, 2016 WL 3176574, at *2 (D. Nev. June 3, 2016). "Equitable contribution is implied by law and designed to prevent the potentially unfair result that would occur" if one insurer pays more than its fair share, thereby allowing another insurer to profit at the other's expense. *Id.* "As a general rule, an insured's loss should be 'equitably distributed among those who share liability for it in direct ratio to the portion each insurer's coverage bears to the total coverage provided by all the insurance policies.'" *Great Am. Ins. Co. of N.Y. v. N. Am. Specialty Ins. Co.*, 542 F. Supp. 2d 1203, 1212 (D. Nev. 2008) (quoting *Fireman's Fund Ins.*, 65 Cal. App. 4th at 1294).

---

Ct. App. 2006); *Progressive W. Ins. Co. v. Yolo Cnty. Superior Ct.*, 135 Cal. App. 4th 263, 272 (Cal. Ct. App. 2005).

Because Zurich has not alleged the amount of coverage its policy provides, it has not plausibly alleged it paid a disproportionate share. Additionally, Zurich's allegations that Aspen funded the entire defense and $988,000 of the settlement compared to Zurich funding none of the defense and $323,187.66 of the settlement undermine the plausibility of an equitable contribution claim. I therefore dismiss this claim. But it is not clear that amendment would be futile, so I grant Zurich leave to amend this claim. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (quotation omitted)).

### D. Equitable Indemnity

Aspen argues this claim fails because Aspen had no legal duty to protect Zurich as a joint tortfeasor. Zurich responds that the authority on which Aspen relies does not apply because this case does not involve joint tortfeasors.

"[E]quitable indemnity is a judicially-created construct to avoid unjust enrichment." *Medallion Dev. v. Converse Consultants*, 930 P.2d 115, 119 (Nev.1997), *superseded by statute on other grounds as stated in The Drs. Co. v. Vincent*, 98 P.3d 681, 688 (Nev. 2004). Like equitable subrogation, equitable indemnity completely shifts the loss from the party that paid "to the party primarily responsible." *Id.* Equitable indemnification "has been developed by the courts to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009). "A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as

13

between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter." *Id.*

Additionally, there must be "some nexus or relationship between the indemnitee and indemnitor." *Id.* For equitable indemnity to apply between joint tortfeasors, "there must be a preexisting legal relation between them, or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor." *The Drs. Co.*, 98 P.3d at 688. The "obligation to indemnify clearly arises in certain situations, for example, when a master-servant relationship exists." *Hydro-Air Equip., Inc. v. Hyatt Corp.*, 852 F.2d 403, 406 (9th Cir. 1988) (applying Nevada law). But equitable indemnification may also be "entirely proper if it is simply fairer to shift the burden of loss." *Id.* (concluding allegations of a successor-in-interest relationship provided "a sufficient nexus between the parties" to trigger equitable indemnity).

Zurich denies it has done anything wrong, so the rule as between joint tortfeasors does not apply, at least under the facts pleaded in the complaint. Instead, the question is whether there is a sufficient nexus to support indemnity. The Supreme Court of Nevada has not addressed whether two insurers who insure the same insured for the same risk share a sufficient nexus to allow for equitable indemnity where one of the insurers engaged in bad faith, resulting in an overall increased settlement amount. At this stage, I will not dismiss the claim so that it may be further factually developed. *See McGary*, 386 F.3d at 1270.

### E. Declaratory Relief

Aspen argues that Zurich's declaratory relief request is duplicative of its substantive claims, and therefore should fail for the same reasons as the substantive claims. Zurich responds that because its claims are properly pleaded, its declaratory relief request also survives dismissal.

Zurich does not assert a separate claim for declaratory relief, although it states in the complaint that it is seeking a declaration determining the parties' rights based on the complaint's allegations. Consequently, to the extent Zurich seeks declaratory relief, that request rises and falls with the claims as set forth in this order.

**F. Certification**

The parties raise numerous novel issues of Nevada law. They should consider whether, and at what stage of this case, certification of legal issues to the Supreme Court of Nevada may be appropriate. *See* Nev. R. App. P. 5.

**III. CONCLUSION**

I THEREFORE ORDER that defendant Aspen Specialty Insurance Company's motion to dismiss **(ECF No. 7) is GRANTED in part**.

I FURTHER ORDER that plaintiff Zurich American Insurance Company may file an amended complaint by August 31, 2021 to correct the identified deficiencies, if facts exist to do so.

DATED this 6th day of August, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE